United States District Court
Southern District of Texas
**ENTERED**
August 04, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| **YOHANEL LAFFITTE PANTOJA,** Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. **1:26-cv-788** |
| | § | |
| **FACILITY DIRECTOR**, Port Isabel Service Processing Center, *et al.*, Respondents. | § | |

**MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**

Before the Court is Yohanel Laffitte Pantoja's "Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241" (Laffitte Pantoja's "§ 2241 Petition"). Dkt. No. 1. For the reasons discussed below, it is recommended that the Court: (1) **DISMISS WITHOUT PREJUDICE** Laffitte Pantoja's § 2241 Petition; and (2) **DIRECT** the Clerk of Court to **CLOSE** this case.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

Laffitte Pantoja, a citizen of Cuba, is in immigration custody at the Port Isabel Service Processing Center ("PISPC") located in Los Fresnos, Texas. Dkt. No. 1 at 1.

On July 7, 2019, Laffitte Pantoja entered the United States and presented himself to immigration officials in Brownsville, Texas. Dkt. No. 1 at 3. The Department of Homeland Security ("DHS") subsequently initiated removal proceedings against Laffitte Pantoja. *Id.* On February 7, 2020, an immigration judge ("IJ") ordered him removed to Cuba. *Id.* at 4. On January 21, 2021, Immigrations and Customs Enforcement ("ICE") released Laffitte Pantoja on an Order of Supervision. *Id.* On October 12, 2025, Laffitte Pantoja was detained in Benton

[1] Information obtained from Laffitte Pantoja's § 2241 Petition. *See* Dkt. No. 1.

County, Arkansas on a charge of "Breaking and Entering", for which he was placed into a diversion program. *Id.* at 7; Dkt. No. 1-1 at 2. On February 27, 2026, Laffitte Pantoja was transferred back into ICE custody, where he remains. Dkt. No. 1 at 7.

## II. LEGAL STANDARDS

### A. Federal Subject Matter Jurisdiction: *Standing and Ripeness*

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Federal courts presume that any given case lies outside this limited jurisdiction, and the party seeking to invoke jurisdiction has the burden of showing otherwise. *Kokkonen*, 511 U.S. at 377; *Aetna Cas. & Sur. Co. v. Hillman*, 796 F.2d 770, 775 (5th Cir. 1986). Accordingly, federal courts have an independent obligation to examine their own subject matter jurisdiction, even sua sponte. *Rivero v. Fid. Invs., Inc.*, 1 F.4th 340, 344 (5th Cir. 2021), *cert. denied*, 142 S.Ct. 1670 (2022) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)).

The United States Constitution limits federal jurisdiction to the resolution of "cases" and "controversies." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559 (1992); U.S. Const. art. III, § 2, cl. 1. Standing is an "essential and unchanging part" of the Constitution's case-or-controversy requirement. *Lujan*, 504 U.S. at 559. Standing requires, in part, an "actual or imminent" injury, i.e., one that is "ripe for decision." *Id.* at 560; *Shields v. Norton*, 289 F.3d 832, 835 (5th Cir. 2002), *cert. denied sub nom. Schuehle v. Norton*, 537 U.S. 1071 (2002). For a claim to be ripe, it must have "matured sufficiently to warrant judicial intervention." *Contender Farms, L.L.P. v. U.S. Dep't of Agric.*, 779 F.3d 258, 267 (5th Cir. 2015) (internal quotations omitted). A premature claim for relief is not judicially ripe and falls outside the federal courts' limited jurisdiction. *Shields*, 289 F.3d at 835; *see also Sample v. Morrison*,

406 F.3d 310, 312 (5th Cir. 2005) (per curiam) (noting that standing and ripeness are "essential components of federal subject-matter jurisdiction.").

Without subject matter jurisdiction, federal courts have no authority to adjudicate a case and must dismiss it. *Goodrich v. United States*, 3 F.4th 776, 779 (5th Cir. 2021); Fed. R. Civ. P. 12(h)(3). Dismissal for lack of subject matter jurisdiction is without prejudice. *Carver v. Atwood*, 18 F.4th 494, 498 (5th Cir. 2021).

### B. 28 U.S.C. § 2241: *Habeas Review of Final Orders of Removal*

The district courts may grant writs of habeas corpus to persons in federal custody in violation of federal law. 28 U.S.C. § 2241(a), (c)(1), (c)(3). This power extends to immigrant detainees in custody beyond the statutorily mandated removal period. 8 U.S.C. § 1231(a)(1)(A); *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001). Habeas review of removal orders, however, is conditioned on the detainee first exhausting all available administrative remedies. 8 U.S.C. § 1252(d)(1). Failure to exhaust administrative remedies should result in dismissal without prejudice. *Dawson Farms, LLC v. Farm Serv. Agency*, 504 F.3d 592, 607 (5th Cir. 2007).

### C. *Zadvydas v. Davis*

Immigration judges are authorized to issue orders of removal, which become final once the Board of Immigration Appeals ("BIA") has acted or the time to seek review of a removal order expires. *See generally* 8 C.F.R. § 1241.1; *Texas v. United States*, 524 F. Supp. 3d 598, 614 (S.D. Tex. 2021) (Tipton, J.). Generally, the Government has 90 days to execute a final removal order and remove the unauthorized immigrant from the United States. 8 U.S.C. § 1231(a)(1)(A).

Though § 2241 proceedings "remain available as a forum for statutory and constitutional challenges to post-removal-period detention," the detainee's ability to seek habeas relief is subject to certain time constraints. *Zadvydas*, 533 U.S. at 688. When the

Government fails to execute a removal order within the 90-day period, post-removal detention must be limited to a period "reasonably necessary" to effectuate removal; indefinite detention is impermissible. *Id.* at 689.

This does not mean that any amount of post-removal-period of confinement is unlawful; rather, the Government's obligation to rebut a presumption of indefinite detention does not activate until after detention has been ongoing longer than six months, and only after the immigrant detainee first makes a showing that "there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. Up to six months of immigration detention after entry of a final removal order is, therefore, "presumptively reasonable." *Id.*; *Chance v. Napolitano*, 453 F. App'x 535, 536 (5th Cir. 2011) (per curiam).

In arriving at the six-month presumption, the United States Supreme Court acknowledged the sensitive interplay of separation of powers concerns and national interests in the immigration context. *See Zadvydas*, 533 U.S. at 700. The six-month presumption, then, reflected a reasoned judgment that earlier review of post-removal-period detention posed too great a risk to institutional interests to properly warrant judicial scrutiny.

## III. DISCUSSION

As discussed above, in *Zadvydas*, the Supreme Court held that detention after a final order of removal is prolonged and unconstitutional when there is no significant likelihood of removal in the reasonably foreseeable future. 533 U.S. at 701. However, there is a six-month presumption of reasonable detention after an order of removal. *Id.* Here, Laffitte Pantoja fails to address or overcome the six-month presumption of reasonableness. Because Laffitte Pantoja has not been in custody since his removal order became final beyond the presumptively reasonable period set forth in *Zadvydas* and does not present facts to

overcome the presumption, his § 2241 petition should be dismissed without prejudice as premature.

## IV. RECOMMENDATION

For the foregoing reasons, it is recommended that the Court: (1) **DISMISS WITHOUT PREJUDICE** Laffitte Pantoja's § 2241 Petition; and (2) **DIRECT** the Clerk of Court to **CLOSE** this case.

## V. NOTICE TO PARTIES

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

**SIGNED** on this **4th** day of **August, 2026** at Brownsville, Texas.

**Ignacio Torteya, III**
**United States Magistrate Judge**